# JANGER v. ROBINSON.
## No. 69-C-4762.
Circuit Court, Juvenile and Family Division, Palm Beach County.

May 17, 1974.

State Attorney, West Palm Beach, for the petitioner.

Christopher B. Robinson, Hypoluxo, in pro. per.

LEWIS KAPNER, Circuit Judge.

In April, 1968, in a California proceeding, the respondent was adjudicated the father of the child herein. The case was then presented to this court under the Uniform Reciprocal Support Act and, on September 21, 1970, the circuit court ordered the respondent to pay the sum of $175 per month for the support of the minor child. The respondent failed to make these payments and he was brought before the court on a contempt proceeding. On April 27, 1971 he appeared before the court. The court found that the reason for his non-compliance was his financial difficulties rather than a willful refusal and, accordingly, adjudged him innocent of the contempt charges.

Respondent next sought to reduce his payments and, on August 10, 1971, his obligation was reduced to $60 per month, plus $15 toward his arrears.

He again appeared in court on October 26, 1971 and he was then adjudged in contempt for "being so far in arrears and for making no payments whatsoever toward his support obligation." On February 2, 1972 the court directed the sheriff to take the respondent into custody unless he paid the sum of $500 toward his obligation. This capias was recalled and the respondent paid $500 and began making payments thereafter.

Respondent made his payments, albeit it irregularly, until the case was again presented to the court on his petition for reduction. This hearing was held on October 24, 1972. The court reserved ruling on that motion and requested the state attorney to obtain certain information from the petitioner-Janger. The court requested, *inter alia,* the following —

> "What is the petitioner's financial status? If she is married, what does her husband do and earn? Is she

employed? If not, what is her income and how is she supported? What kind of place does she live in — house, rental, etc., and the value thereof? Is her family in fact wealthy?"

The respondent has made no payments since then and his explanation is that he understood that no payments would be required until the inquiries were answered. To consider whether respondent was justified in his belief so as to make his actions non-contemptible, a brief consideration of the relationship between the information requested and the nature of a father's support obligation is in order.

At the outset, it should be emphasized that the issue is not whether the respondent is obligated to pay the arrears, approximately $3,000 — the question before this court is whether he is in contempt and should be incarcerated for his failure to pay.

Respondent has previously sought to reduce his support obligation on the grounds of his financial change of circumstances. He has previously established his financial difficulties before this court and under such circumstances it is proper to inquire into the mother's capabilities in determining the extent of the father's obligation. Dickens v. Dickens, 1955, Palm Beach County, 8 Fla. Supp. 91; 10A Fla. Jur., *Dissolution of Marriage, etc.,* §77; see also Willis v. Willis, (1971, 2nd DCA), 254 So.2d 59. Furthermore, it is appropriate for the court in Uniform Support proceedings to request the state attorney's office to obtain information from the petitioner and the initiating state. See Fla. Stat. §88.271.

Clearly, the information sought is pertinent to the issue of support and, for this reason alone, the respondent is justified in requesting this information.

More importantly, the information is pertinent to the issue of whether contempt proceedings and incarceration are appropriate.

Contempt proceedings in support cases have been constitutionally upheld on the theory that such proceedings are necessary to prevent children and other dependents from becoming public charges or suffering extreme deprivation as a result of their dependency upon irresponsible supporters. Contempt is an equitable remedy and should be exercised only when the respondent's failure is the result of a willful refusal to comply with the court's order, and then only when equity demands it. See 10A Fla. Jur., *Dissolution, etc.,* §356; Petrucci v. Petrucci, (3rd DCA, 1971) 252 So.2d 867; Goff v. Goff, 151 So.2d 295; Gottesman v. Gottesman, 220 So.2d 640. If other remedies may be found, or if the petitioner is not in fact

dependent upon the respondent for support, there is no reason to use this extreme remedy. In such cases, there is no more justification for incarceration for refusal to pay a support obligation than there is in other kinds of debts for which incarceration is prohibited. §11, Declaration of Rights, Florida Constitution.

It is true that other remedies — attachment, garnishment, etc., are not as effective as incarceration. But both the United States and Florida constitutions, as well as the tragic experience of debtors' prisons, have long established that it is better to let debts go unpaid than to imprison people who cannot, or even will not, pay them. Support obligations are an exception, but only when the obligee is dependent upon the obligor, and equity requires incarceration.

Even where dependency has been established, courts are still required to take equitable circumstances into consideration. The case of Satterfield v. Satterfield, (Sup. Ct., 1949) 39 So.2d 72, bears some similarity to this case. In *Satterfield* the wife had remarried and removed the children to another state, thereby denying the husband his right of visitation. The trial court adjudged the husband in contempt for his arrearage, and the appellate court reversed the contempt citation, but affirmed the judgment for arrears.

In the case *sub judice,* the respondent was adjudicated the father of this child in a paternity action in California. He has testified that he had known the petitioner only casually and was not confronted with the paternity charges until the child was four years old. He has had virtually no contact with the child, the petitioner has not told the child of the respondent's parentage, and, in fact, the child does not carry the respondent's name. Additionally, the respondent has testified that the petitioner's family is wealthy and respondent points to one piece of property allegedly owned by them which may be worth over $1,000,000. Inquiry as to petitioner's means of support and her family's financial resources have been made but she has not adequately responded. This information may be immaterial as to whether the respondent is obligated to contribute to the support of the child, but it certainly is an equitable consideration as to whether he should be incarcerated, or whether petitioner should pursue the same remedies, albeit poor ones, available to others to whom monies are owed.

These inquiries were directed to the petitioner on October 30, 1972. Despite several requests to the initiating state, she did not respond until July 9, 1973, and the response did not adequately deal with the question of her ability to support her child and her family resources. The only entry in the file indicating communication to the respondent of petitioner's affidavit is a memo from the

state attorney's office stating — "I spoke with him [respondent] concerning this matter and he stated that Paula Ilsley and Judge Kapner were handling this matter." Shortly thereafter, the state filed a notice of hearing on the petition for support.

It might well have been assumed by the respondent — as it was by the court — that the initiating state would have sent the information within a reasonable time. This might not have excused him from complying with the support order pending receipt of that information, but his failure to so comply during that period should not be considered contemptuous unless he had been directed by the court to comply. No effort was made to obtain such an order. It is quite likely, though, that had the matter been presented to me, I would not have required the respondent to make his payments until the petitioner properly responded, which to date she has failed to do. This would not necessarily relieve the respondent of his obligation, but would simply require the petitioner to furnish sufficient information to enable the court to fairly rule on this case. To hold otherwise would require the respondent to continue making payments with no assurance that petitioner would ever adequately respond.

It is therefore found and held that respondent is not adjudged in contempt for his failure to pay from October, 1972 to the present.

It is further ordered that this matter be transferred to the Honorable John R. Beranek, pursuant to the state's request.